Next case, Parker v. Reema Consulting, Mr. Corky Good morning, Your Honors, and it may please the Court. My name is Dennis Corkery, and I'm arguing on behalf of Appellant Evangeline Parker. I'm ceding five minutes of my time to Amicus EEOC, and I would like to reserve three minutes for my rebuttal. In her well-pled complaint, Ms. Parker adequately alleged, one, that she faced harassment because she is a woman, when there was a rumor that her promotions were because she performed sexual favors, and RCSI mistreated her in response to that rumor. Two, that Venus' totality, the harassment that she faced, was sufficiently severe or pervasive to make that a plausible claim of a hostile work environment. Three, that Ms. Parker was retaliated against after she complained about treatment that she reasonably believed was at least an inchoate hostile work environment because it was not clearly established that the conduct she faced was acceptable under Title VII. And four, that her claims of sex-based termination were supported by additional allegations that supplement the claim that she exhausted the administrative process. The District Court erred in dismissing these claims with prejudice, without opportunity to amend, and Ms. Parker respectfully requests that this Court reverse the District Court's dismissal of her action. Your Honors, the District Court made fundamental errors in dismissing Ms. Parker's complaint, and its key error was that it looked only to the content of the rumor that Ms. Parker was trading sexual favors in order to achieve promotion. But her complaint tells a fuller story of the discrimination that she faced at RCSI. The District Court... And the discrimination has to be for your first count on the basis of her sex. Correct, Your Honor. So, which paragraphs of the complaint plead that? That it was that the hostile work environment was because of her sex? Correct. Well, it would be taken in the totality that the rumor was based on her performing sexual favors. In totality, you've got to have some circumstances. So, tell me the specific paragraphs in the complaint that plead discrimination on the basis of sex. Sure. Paragraphs 7 through 10, which deal with the content of the rumor being spread. There was also... 7 through 10 are the facts of when she was employed. Excuse me. Sorry. I apologize, Your Honor. That, excuse me, is paragraph 12. Paragraph 12 details the content of the rumor. And then if you look at the paragraphs 19 through 22, you'd have the meeting, the all-hands meeting at which the rumor was discussed with her coworkers. The meeting was called by Mr. Moppins. What makes that on the basis of her sex as opposed to her conduct? Because in that meeting... And as I read it, the only rationale given for count one was in paragraph 25 when it's pleaded that the coworker was jealous. Well, I think there are two ways to answer that. And I'll start first with the meeting about the rumor. And because this meeting shows a disparate treatment in the way that RCSI was responding to the rumor. Because in this meeting, this was a meeting called for all warehouse employees, including those Ms. Parker managed. And at this meeting, Mr. Pickett, who was the male party of the rumor, he was allowed into this meeting. He was given the opportunity to defend himself if he chose to do so while this rumor was being discussed. But Ms. Parker was physically kept from attending the meeting. That RCSI's manager, Mr. Moppins, slammed the door in her face because of her. She arrived right after Mr. Pickett. And so that shows the disparate treatment between men and women in the way that RCSI was dealing with the rumor. But also then going back to the rumor itself, and that the content of the rumor is gender-based. Because it attacks Ms. Parker's status as an employee. It says that her worth in the company is not based on her merit, but based on her ability to provide sexual favors. The rumor, in essence, reduces her to her sexuality. And if the rumor, if the content of the rumor... Female and male, male and female, female, female, male, male. Yes, Your Honor. That there could be any rumor in which a person's merit at the workplace is reduced to just whether or not he or she is providing sexual favors. But that's a per se rule. Well, a per se rule in that it could form a basis for a hostile work environment. The rest of the totality of how the hostile work environment played out, the motivations for it, the way it was spread, how it was reacted to. But certainly as a way, as a basis, a foundation for looking at the hostile work environment. Yes. So your bottom line position is anytime there's one of these, as you all phrase it, sleeping to the top accusations, regardless of who's involved, that meets the threshold of facing a claim based on sex. Yes, Your Honor. That would get your foot in the door as far as starting a plausible claim. So you could never have a circumstance that would satisfy what the district court said in this case in terms of being it was conduct related, it was not on the basis of sex. There could be other circumstances where, say, there's no power differential, there's not an attack on the status of an employee. There could be situations, I mean, there are other case law where the rumors were not found to be on the basis of sex because there was record testimony. Your Honor, you're not overreaching. It seems to me that your argument is that this rumor was that because she was a woman and was willing to go to bed with a boss to get promotion, the quid pro quo is basically, that's the old quid pro quo, sexual exchange for promotion, which as we've said violates the law under Hartzell. And the problem isn't, I'm not sure you can sustain a fact that the rumor about that violates the law. It seems to me you have to add the fact that the management acted on the rumor, not only acted on the rumor, spread it, and then acted on it and said she has now lost all ability to get promotions because of the rumor and then apparently fired her for the same reason. So if you reach beyond that, I mean, you're trying to justify this complaint, but it seems to me rumors go around plants all the time and they don't provide causes of action. It seems to me that your argument has to be that they acted on this rumor of a sexual nature as if it were true and fired her based on the fact that the rumor, which was about her sleeping to get promoted, even though it was false, was acted on as if true. That's correct, Your Honor. Which is a strange allegation, but it might be a form of discrimination. Yes, Your Honor. It is looking not just at the rumor, but also at the way that RCSI reacted to it and the way that it desperately treated Mr. Pickett, who was the male party to the rumor, and the way it treated Ms. Parker. Mr. Pickett was not terminated. Ms. Parker was. There was further disparate treatment in the way that RCSI reacted to Mr. Jennings. He was the coworker who started the rumor out of jealousy that Ms. Parker had advanced in her career while he had stayed still in his career. They had both started at the same times. When he put in a false complaint of harassment against Ms. Parker, it led to restrictions on her and was ultimately given as one of the reasons for her termination. But when she complained about his harassment, there was no punishment doled out on him. Your Honor, I would like to turn to the retaliation point, if I may, in that even if this court agrees with the district court as to count one, which is Ms. Parker's house-to-work environment claim, it should reverse this to count two, her retaliation claim, because a reasonable worker in Ms. Parker's shoes could have believed that she was facing at least an inchoate gender-based house-to-work environment. And the district court suggested in its analysis that an employee could be mistaken about the facts but not the law when opposing discrimination in good faith. But that framework is not the framework of the Supreme Court or the circuit, and is contrary to other circuits that have addressed that very issue, including the Ninth, the Seventh, and the D.C. Circuit. And it was also misapplied by the district court, because whether or not but for her gender she would have faced the harassment that she did is a question of fact, unless the district court was trying to say that these types of rumors are always going to be, as a matter of law, not part of a Title VII case, which is not what any of the cases that have looked at these have ever held that far. Is your argument that the district court there applied the wrong standard? It applied the wrong standard, and it also misapplied the standard that it announced. So, if the district court applied the wrong standard, in your view, what action would we take? Meaning, do we send it back to the district court to apply the correct standard, or do something else? I think you should just remand for, excuse me, I believe, respectively, that this court should remand for discovery, because the correct standard is whether or not Ms. Parker was reasonable in her belief and the allegations of the complaint. So, would we have to find that in the first instance that it was reasonable, or do we send it back to the district court to do that? I believe that you can find here from the facts in the complaint that it was, you can hold that it was reasonable, and reverse the dismissal of the complaint to proceed. And, again, Ms. Parker was reasonable in her belief, and both as to the law and to the facts. As to the law, it's not clearly established among the case law that this type of harassment is not in violation of Title VII. It's not so far afield from Title VII jurisprudence, especially quid pro quo Title VII jurisprudence, as to be unreasonable. And, again, Ms. Parker was not unreasonable as to the facts, where, again, there's disparate treatment between Mr. Pickett and Ms. Parker, showing that she had a reasonableness in the gender-based nature of the discrimination she was facing. And the importance of this reasonableness standard is to be, you know, part of the admonitions of the Supreme Court and this court, that Title VII, Section 704, needs to be read broadly in order to encourage reporting discrimination. And part of that is in keeping that a broad standard of what is reasonable. And, Your Honors, I would just want to briefly touch on my fourth point, which is Count 3, Ms. Parker's termination on the basis of her sex, and whether or not she exhausted her administrative remedies. She did put in a charge, an administrative charge, in which she noted she was discharged.  And in her complaint, there's an allegation that there was a three-strikes rule surrounding termination that was disparately applied between men and women. And this three-strikes rule is not a new basis of discrimination. It's not a new adverse action. It's not a class claim or a pattern in practice claim. It is simply an allegation that supports her plausible claim that she was terminated because she's a woman. And a reasonable investigation into her charge of termination would have looked to see if there had been any policies in our CSI, whether those policies were evenly applied. Indeed, it's classic evidence to show pretext, to show that an internal policy was not applied for the plaintiff. And thank you, Your Honors. Thank you. All right, Ms. Gantz. Good morning, Your Honors. May it please the Court, Julie Gantz for the EEOC. I wanted to just turn to a couple of things you all have mentioned already. You would not be making a finding on whether her belief was reasonable, but whether it's plausible. Under Iqbal and Twombly and the standards for a motion to dismiss, you're looking at the plausibility of the allegations stated in her complaint accepted as true. So the only thing you're looking at, and the district court did not actually apply a plausibility standard or mention Iqbal and Twombly in its ruling. I thought the standard was in the retaliation context whether or not the plaintiff's belief was objectively reasonable. That's correct, Your Honor. But in a motion to dismiss posture when there's no record, it's whether it's plausible that her belief was objectively reasonable. So you look at the same standards, but instead of saying has she made that out in this case, you say could you infer from the allegations in the complaint accepted as true whether her belief was objectively reasonable. And for the same reason, we are not advocating for a per se rule in rumor cases that it's always because of sex, but based on the factual allegations... The plaintiff's counsel does advocate for that rule. Excuse me? The plaintiff's counsel does advocate for that rule. Well, I think his argument was that in this case... That's what they say in their brief. A maliciously fabricated rumor about a female employee's quid pro quo must constitute discrimination because of the female employee's sex. Well, the district court in this case failed to understand that the rumor itself was a sex-based insult, suggesting that she had earned her promotion because of sexual favors with a supervisor rather than merit. And a male employee started the rumor, male supervisors and coworkers perpetrated the rumor, and then I think it was you that was talking about their reaction. What would happen if it was two guys and one of them got the promotion? Same thing? Well, the reason it's because of sex in this case, or it's plausible that it's because of sex, is had she been a man... What about the case that I just gave you? Not necessarily, Your Honor. It would depend on the facts and circumstances of the case. If Parker had been a man, it's quite unlikely that Jennings would have started a rumor that he had earned his promotion... Why do you say that? ...by sleeping with Pickett, the supervisor. So that's a but for... But if it was the rumor, wouldn't that be sufficient under your reading of the case law? My reading of the case law is that it depends on the facts and circumstances, and there are many ways to get it because of sex, finding that this court would need to make. But at this point, the question is, is it plausible that her sex was responsible for the harassment that she was subjected to? So that is in the form of the rumor. It is also in the open hostility and disrespect that she encountered from coworkers, which caused her to try to clear the record and set the record straight, which was met from even more hostility by the head of the office, who told her he would no longer allow her to advance in the company, kept her out of a meeting, and slammed the door in her face in front of the whole office while he admitted the male subject of the rumor, and then ultimately fired her in part based on a sexual harassment claim against her or by the same person who started the rumor. So there were many allegations in the complaint, again, accepted as true that would make a plausible case that she was subjected to this hostile work environment because of her gender. And again, there has been no discovery, there are no facts. To the retaliation. Okay. We agreed that the district court applied the wrong standard. Is the course of action for the appellate court to make a finding now that it was plausible that there was an objectively reasonable belief on her part, or do we send it back to the district court instructing us to the correct standard to apply? No, this court can say that it's plausible. You can't make a finding that it was objectively reasonable. I know what the court can do. I'm asking you what the court ought to do. You are required to do that under Iqbal and Twombly if you believe that the allegations of her reasonable belief that she was being subjected to a hostile work environment were reasonably, that she had a reasonable belief that she was opposing unlawful harassment. You would then send the case back to the district court to continue on with discovery, and then once the factual record is developed, then you can get at the facts of whether the record supports these allegations in the complaint. This is a very early stage of the proceedings, and the commission is here to remind the court that as long as the complaint states plausible allegations of hostile work environment, retaliation, and discriminatory discharge, then Parker should be allowed to proceed on with her case, have discovery, and then once the factual record is developed, the court can make rulings based on that. But here the court did not apply that standard and also applied the same standard to her retaliation claim as it did to her hostile work environment claim. The court said because I've decided that this is not because of sex, there can be no retaliation claim. But those are two different independent claims, and the retaliation provision is broader than the anti-discrimination provision. So that was another error in applying the wrong standard. So I see my time is up. So we would ask that you reverse the dismissal of this charge. I mean, sorry, the claim. Thank you. Mr. Walsh. Your Honors, this is a relatively simple case. It's a Title VII case. Title VII is pretty clear. Title VII says that no employer is going to discriminate against an individual based on their race, their color, their sex, religion, national origin. When they talk about sex, they talk about gender. They don't mean sex as in the context of intercourse. They mean gender. Well, hold it, hold it, hold it. What did our case in Hartzell say? Your Honor, I'm not sure exactly with respect to Hartzell. Hartzell was quid pro quo, sex for promotion. I understand that, Your Honor. We said that violates Title VII. It's a pretty standard routine. Your Honor, that's correct. The reason is that the woman is basically prostituting herself for the or demanding, the employer is demanding the prostitution of the woman for her job. And it demeans the job because she's a woman and having sex with the boss. That's a traditional, straightforward case. Traditional, yes. Quid pro quo. Now, here there's a rumor which doesn't amount to the quid pro quo, actually having sex. It's a rumor that had it. But the complaint goes much further. The complaint goes not only was this a rumor based on the fact that she was having sex with the boss to get the job, but that the boss spread the rumor. He said to somebody else, he says, I understand you're going to bed with so-and-so, and acted on it and says, you're not going to get any more promotions, closed the door on it at the meeting, and ultimately fired her, all because of this rumor. Now, I don't understand what's going on, whether he believed it or half believed it, but it's all because she was allegedly getting her job because of sex, which is the Hartzell format. You can go back to the original Title VII cases, and obviously the first cases were basically discriminatory pay. But then you get the aggravated circumstances, harassment in the workplace, and all those cases that talk about demanding sex in the workplace from a woman violates Title VII. I agree, Your Honor. Okay. We're not dealing with that situation. That ends the case here. It's not just a rumor. They acted on it. Your Honor, I don't know. I don't believe that the complaint suggests in any way that they acted on quid pro quo situation. What they said, there was a rumor of conduct, which is the same thing the judge held below. Hold it. Sexual conduct violates the law. That dichotomy, you keep using it in your brief, conduct versus gender. It's like saying Christmas versus oranges. I mean, it just doesn't compare. Sexual conduct violates the law. Gender, acting on the basis of gender, violates the law. And so the comparison has to be, your argument probably is that just a simple rumor, regardless of what the subject is, is not a violation of the law. But in this case, the allegations, I mean, I'm not saying that they all can be demonstrated, but here we have Mr. Maupin stated that he had great things planned for Ms. Parker, but that he could no longer recommend her for promotions or higher level tasks because of the rumor. He also stated he would not allow her to advance any further within the company. Now, the rumor was pretty clear, it's alleged in here, that she was going to bed with a boss in order to get a promotion. Correct, Your Honor. All right. And then they have the meeting where they discuss the rumor and they slam the door and didn't let her participate. Why wouldn't they let her participate in it? Your Honor, from the factual allegations that are made, it doesn't say that. She indicates that she was late for the meeting and the door was slammed in her face. Now, she was right there. It says. With the motion to dismiss, Your Honor, so I can't, without going outside of the record, divulge it back to you. No, no, no. We're stuck with the complaint. Correct. And we accept that we set the facts as true. When they arrived, Mr. Maupin's opened the door just enough to let Mr. Pickett in and promptly slammed the door in Ms. Parker's face and locked her out. They came to the meeting together. Correct, Your Honor. That's the allegation. That is, Your Honor. All right. And then they ultimately fired her because of this. That's the allegation. Your Honor, what Ms. Parker has indicated was that this was gender-based harassment. It is because she was a woman in this situation. She was treated differently. It's because she was a woman who went to bed with a man to get a promotion. Because there was a rumor that she went to bed with someone to get a promotion. I understand, but if it ended there or if they helped dispel the rumor, there's no problem, even though it was all over the workplace. The problem was management acted on it. They spread the rumor and then they disciplined her based on the rumor and then they fired her because of the rumor. I'm not sure that her allegation suggests that they spread the rumor. What her allegation says is that Mr. Maupin's actually asked in a derogative manner of the other participant, Mr. Pickett, whether he actually was engaged in this conduct. Hey, you sure your wife ain't divorcing you because you're fucking Parker? He asked in a derogative manner. Correct, Your Honor. Absolutely. He wasn't spreading the rumor. He was asking, following up on it. What do you think that is? When you go up and tease a guy and say, what's your wife saying about going to bed with her? Your Honor, the allegation is that he was teasing. It said he was asking in a derogative manner. That's not teasing. That's even worse. That's accusing. That's okay. That's accusing. Well, I understand, Your Honor, but it's not putting any credence into the rumor. That's spreading the rumor. Your Honor, under that theory, RCSI could My wife say because you're going to bed with somebody. It's no longer a rumor. Your Honor, at that point, what you're suggesting is that RCSI could never have cured the taint of a rumor. That the minute they started to investigate the rumor, they would be considered to have spread the rumor, only to exacerbate the situation further. That's not what the law does. That's not what the law is designed to do. I'm talking about allegations. I agree, Your Honor. All right. Your Honor, one of the other things with respect to How about the meetings when Mr. Maupin said, I used to have good ideas about where you're going to go in this company, but that's all ended. You're not going to get any more promotions. Your Honor, in the same allegations, it's referred that Mr. Maupin said stop huffing and puffing about this B.S. rumor. Obviously, he didn't put any credence in the rumor and wasn't making decisions based on her allegations. Why didn't he go around and dispel it? Why didn't he get the two together and say this is untrue and say to Jennings, he said, if I hear this again, you're out of here. That's the way management would handle it. But the problem is they acted on it, at least on the allegations. I don't know if they did. You can prove your case. But the question is there was this artificial dichotomy that the district court used, and you put in your papers, and the court relied on, between something called conduct and gender. And that is totally nonsensical under the statute because sexually oriented conduct is violative of Title VII. And here the conduct was spreading, perpetrating, and acting on a rumor relating to sexual harassment and sexual inappropriate sexual prostitution. Your Honor, the rumor that was involved, that they are seeking to have facilitate this particular claim, is entirely a rumor that is based on conduct. I understand your argument, what you're saying with respect to the fact that in this particular instance, it is based on a sexual relationship. It's sexual conduct. It is, Your Honor. Based on her sleeping to get a promotion. Correct, Your Honor. Had it been two heterosexual, had it been two homosexual men. It doesn't matter. It doesn't matter. I don't care. You can allege something else. The question is when you tell a woman that she's going to bed with the boss in order to get a promotion, that violates Title VII. You agreed with me on that. That's our Hartzell case. Your Honor, I believe in this particular case, what we have is a situation where Ms. Parker was given three different opportunities to show that there was gender-based discrimination going on here. At the EOC, in a complaint, and then in an amended complaint. In all of those situations, she could not. We're not talking about that. We're talking about whether the complaint alleges a Title VII violation. And you have to tell me why this complaint doesn't allege Title VII violation. Because it talks about a rumor based on sexual conduct, which management acted on as if it were true. Your Honor, I don't believe that it says that management acted on it as if it was true. What was involved in the situation is there is a rumor that whether you want to say that it's sexual conduct or just conduct doesn't make a difference. The reality is that there's a rumor that involves an act. I know, but you're suggesting conduct is exempt from the act statute. That was your argument. You said it's conduct, not gender, which doesn't make any sense. You violate the statute with conduct. The question is whether the conduct is based on sex. And the question is whether the discrimination was based on sex or gender. Correct, Your Honor. So at that point, when you look at the remainder of the complaint, nothing else in that complaint identifies that Ms. Parker suffered from any sorts of gender discrimination outside of the rumor. I don't understand where you're reading. The complaint is totally oriented to her going to bed with the boss to get a promotion. That's the whole rumor. That is sexually based, and that is unacceptable in our workplace under Title VII. Your Honor, the way that it was started, but Ms. Parker agrees, was a jealous coworker who was subordinate to her. That's the way to accuse the woman of sleeping with somebody. He's taking advantage of the fact that she's a woman. If the same accusation was made about him, well, it may or may not have been made, but he didn't get a promotion. But wherever the rumor started, it was not ended by the management. It was promoted by management. But, Your Honor, the rumor was started by a jealous coworker, and Ms. Parker was obtained through this entire period six different promotions. Never said one word about this. That was all before, though, wasn't it? It was, Your Honor, correct. I think you said something that I want you to follow up on. You seem to be suggesting that the rumor alone, without more, wouldn't have been enough to make out a claim in this case. Now, that may or may not be true, but the complaint alleges more, doesn't it? It alleges some of the things that Judge Niemeyer talked about, that, you know, the management, instead of squashing the rumor, sort of excluded her from any participation in trying to deal with it. It affected her relationship with coworkers and the like. So why isn't that enough to get past the pleading stage? What she didn't do, beyond the rumor itself, didn't show any other gender issues that came. Everything's tied back to the rumor. Everything that she alleged, whether it was being excluded from a meeting, whether it was coworkers having difficulties with her, or whether it was any other subject that she felt that was an offense, was all tied to the rumor. She wasn't able to identify. What's wrong with that? I'm missing the point. Well, from that standpoint, what it is, assuming from my argument, Your Honor, obviously not Judge Niemeyer's, obviously from the way that I look at it. I'm just asking the question, and this might help you in response to Judge Diaz's question. If you take the Hartzell format, you don't look at other people who went to bed with somebody. You don't look at whether it's male on male and so forth. The fact that a woman is going to bed to get a promotion in a workplace, at the boss's instance, is a violation of Title VII because it's treating the woman as a woman, and she's actually being demeaned and getting a promotion based on her basis, her willingness to go to bed with somebody, as opposed to merit. And demeaning the woman, whereas the man had to get his promotions based on merit, is a form of discrimination. Now, the question is, this does not involve the actual going to bed with somebody, but that's the rumor, and the rumor took on its own life in this case, according to the allegations. It did, Your Honor, but it's a rumor that equally could insult anyone from that standpoint. So with respect to whether Hartzell is— What was the point there? What? It could affect any individual, a man, a woman, heterosexual, homosexual. Of course, but this allegation is said based on the fact that she, as a woman, wouldn't go to bed with Pickett, or did go to bed with Pickett to get the promotion. Correct, Your Honor. So let's take this complaint. I understand. You don't need a comparator. You don't need other people in the workplace. You just need the fact that she was taken advantage of because she was a woman. She wasn't taken advantage of because a woman. She happened to be a woman who was the subject of this rumor. There's a difference between saying that she was taken advantage of because— But— And that's where I believe the distinction is. The argument basically says Hartzell's bad law. At this point, I guess it does, Your Honor. I do believe that, because in this particular case, at the standpoint of which the courts have come across in recognizing a variety of rights— I'm sorry, Your Honor. I thought you agreed that if a woman goes to bed to get promotions in a workplace, and that's the way the workplace runs, that that violates Title VII. I don't believe that in this particular case, Your Honor, that we've got a situation where that's not her. I think that's hypothetical, where they actually go to bed. What if this rumor was true? Let's assume it was true. Then she'd have a case for quid pro quo harassment, which she didn't bring. She claims that it's a place that is so interlaced with gender-based bias that it has affected her employment in some way. But she identifies nothing other than herself as indicating that there's gender bias going on. She doesn't identify—she identifies a variety of female managers. She's not a woman who is being treated not on her merit like everybody else is. She's being treated on the basis of she's going to bed with somebody, whether it's true or not. And she happens to be a woman, Your Honor. I think that's the distinction that I keep looking at. From the standpoint of the fact that she's involved in this rumor, which is the source of everything, she doesn't indicate she was subject to name-calling. She doesn't indicate she was subject to different rumors. She doesn't indicate that there were pictures, that there was pornography, that anything else happened. That's a different case. I completely agree, Your Honor. At this point, we're talking a very low burden. And the burden that she can't seem to establish here, other than the fact that she is a woman, there is nothing about this particular rumor that has any gender component to it all. Nothing. The only gender component is that Ms. Parker is a woman at this point. And that seems to be the problem here. Beyond that, there's no other decision-making that shows anything that reflects in any way that there's gender bias. She herself identifies there were four other managers. On top of that, Your Honor, she identifies that there was an instance where the RCSI attempted to quell the rumor. She identifies in her complaint that there was a meeting. She thought there were apologies. She told the EEOC the same thing. She believed that there were apologies made and that would bring an end to it. That was enough from her perspective to bring an end to this entire situation. Unfortunately, she felt that that didn't end it. It continued for one reason or another. At that point, you look at it and you say, okay, there's not only, other than her being a woman, there's nothing to suggest that gender has any role in this. That's what the law protects, her being a woman and to be treated like a woman as anybody else, that she is promoted and treated based on merit and not because she's a woman. She alleges, I am a woman and I was treated in this case demeaned as a woman, suggesting that I got my job based on going to bed with the boss as opposed to merit. That's her claim. That's at the heart of Title VII. What makes this case peculiar is that it's a rumor and it's not true. But the allegations of this complaint say it went way beyond being a rumor. That management, the top man in the whole plant, acted on it as if, why does he say you can no longer be here? I had big things for you. Your Honor, it does suggest that, the complaint does suggest that things were done, the complaint anyway, suggests that things were done based on a rumor. Correct. And the rumor was a sex-based rumor that she was going to bed with the boss. Your Honor, I don't believe that the rumor was sex-based. Just to give us a simple example. Let's say the rumor was. Let me ask you. You know, you keep arguing back on that. If a secretary in a law firm says, I could become a paralegal, but they said I had to go to bed, my boss said I had to go to bed with him, and I refused, that violates the law, doesn't it?  Yes. Correct, Your Honor. Now, we're not looking at anybody else. We're not looking at harassment. We're looking at quid pro quo. Correct. This rumor does not. This rumor is a suggestion of quid pro quo, having sex with the boss to get the promotion. That's what the rumor was. Your Honor. Mr. Pickett. The only thing about this rumor that suggests gender or sex is the fact that Ms. Parker is female. If the rumor was that she was blackmailing Mr. Pickett to get this, there would be nothing in that complaint that suggests anything about gender. Of course not. But it took advantage of her because she was able to provide sex. And a woman happens to be the woman that can provide sex, which is gender-based. That's a false presumption, Your Honor. It is a presumption to say that it has to be a woman and then it becomes sex-based. You're just challenging the underpinnings of a whole body of law under Title VII that you apparently ought to look at a little more closely. I understand, Your Honor. When you treat women because of their bodies and their ability to provide sex to men and in the workplace and you treat men differently, you treat them on merit, then you are discriminating. And the idea here is that they treated her as if she was sleeping with Pickett and got her promotion that way. That is discrimination. The other hypotheticals you talk about may or may not happen, but you've got to look at the facts of each case. Your Honor, one other case certainly that we cited that identified a very similar situation was the case of Brown versus the post office out of the Second Circuit Court of Appeals. And in that case, it was the same situation. There were a variety of rumors that the individual was sleeping with other people in order to get the boss. She was the union steward at the time. The Second Circuit Court of Appeals took a look at that case and said, wow, there's no facts outside of this to say that the employer, that there was any other gender-based activity that was going on. Outside of the rumor of some sexual activity between a man and a woman, there were zero things that identified any sort of gender bias that were going on. And because of that, they said that it wasn't sufficient under Title VII. The Pasqua case that was out of the Seventh Circuit, same situation. Outside of an individual being able to identify that there was a sexual affair, a heterosexual couple, there was nothing that was able to identify that that rumor was gender-based sufficient to meet under Title VII. We cited both of those things. On top of that, Your Honor, we've got a situation. One of the elements that Judge Tidings relied on was that it was not severe and pervasive. We're talking less than two months that the situation went around between the various parties. In addition to that, Ms. Parker alleged in her complaint and also with the EOC, which was part of the record, that there were apologies that were made at one point at the behest of human resources. As a result of those apologies that were made, she felt that everything was fine at that point in time. But it turned out it wasn't, and that made it even worse. Well, I don't know that that does, Your Honor. They called her in and fired her. That goes to whether it's reasonably severe and pervasive. At this point, we have the situation where the plaintiff also wants to bring an expert testimony, which certainly suggests that a normal jury would not be capable of assessing on their own whether, in fact, this is a situation where they are acting on gender bias. Let me ask one question. Quickly, what's your response to the retaliation argument? Your Honor, basically our position is that in the event that it is not sufficient to either be gender-related conduct, that it could never satisfy the requirements for being a retaliatory complaint. Title VII is protecting gender-based activities. If this was not one, it could not even meet the standard. So if they're wrong on the law as to the underlying claim, there could not be an objectively reasonable belief? That's correct, Your Honor. I believe that's what Judge Title said. Well, tell me what's your best case for that. The best case for that, Your Honor, I suppose the Bass case certainly involved that situation, the Fourth Circuit case dealing with Bass, where that individual was basically wrong entirely as to whether there was, in fact, discrimination in that situation. Thank you, Your Honor. Okay, thank you. I guess we go back to Mr. Corky. Yeah. Thank you, Your Honors. I just want to briefly address a few points that Mr. Walsh made. One was the point about the apologies being made. That doesn't defeat her hostile work environment claim because the harassment did continue after that. After that was when Mr. Jennings put in the false complaint of harassment. He continued to harass her, and then she was ultimately fired. Also, the Brown case especially that Mr. Walsh brought up, that was a case that was decided on summary judgment. And what was peculiar there was that there was record testimony from the plaintiff that the reason that the rumors were being spread was because of a union dispute. And so the analysis of the motivation really was pointing to evidence that suggested that the rumors were not being spread because she is a woman. I think also I want to point out that Title VII is meant to protect individuals. And, yes, this could potentially happen to anyone, but it happened to Ms. Parker. And that it could happen to anyone is not a defense to a Title VII claim, nor is it a defense that there are other women who worked there that may or may not have faced discrimination. This is about Ms. Parker's discrimination and the discrimination that she faced when there was a rumor that said that her value in the workplace was only based on her ability to provide sexual favors. And then that rumor was, yes, started by a coworker, but taken on by the highest-ranking manager in the warehouse. Ms. Parker's alleged that he did spread it, and then he punished her for spreading it. He told her to stop huffing and puffing about it, basically telling her, stop trying to regain your dignity that you've lost about this, and then told her that he was going to fire her or he, you know, had great things planned for her until this rumor. So he was spreading the rumor and then telling her that he had great things planned for her until it was spread. He's the harasser, punishing the harasser for being harassed, which certainly goes to the severe and pervasive prong of the hostile work environment. It's either or, I guess, right? Severe or pervasive, that's correct. And you say that's enough to establish severity? Yes, especially at this stage in the proceedings, and especially because he was a supervisor. And the case law is clear that when a supervisor is the harasser, it heightens the level of the harassment severity. And also, the harassment didn't end because RCSI, out of the goodness of its heart, it ended because it fired Ms. Parker in retaliation for her complaining about it. And RCSI shouldn't be able to get off the hook for hostile work. It doesn't conform and is then adversely treated in the workplace. Does that state a violation of Title VII? Absolutely, Your Honor. Do you need harassment? Do you need pervasive harassment in that case? Under a quid pro quo standard, no, you do not. Thank you, Your Honors. Is this under a quid pro quo standard? No, this is alleged under a hostile work environment because there was no actual, there was no true request for sex in exchange for work. It was just a rumor about it. It was acted on as if it were. I mean, she was treated, she was treated adversely as if the rumor were true. In other words, I don't think, I think it's a very dangerous type of complaint if we were to say that just the simple spreading of a rumor about sexual favors is enough under the Act. It seems to me that's just way, reaching way too far. But this case has peculiarities about it that treat the rumor in a mixed manner. Sometimes they believe it's actually happening. Another time they're not. But in any event, the way it's all treated, it demeans her because of the suggestion that she's going to bed and that's how she's getting promotions as opposed to. And then, of course, I don't know how this plays out, but Jennings filed his own complaint, didn't he? Yes, he did, Your Honor, which led to restrictions on Ms. Parker and was ultimately given as a reason for her termination. But he faced no punishment for his part in the harassment against her. Thank you. Thank you, Your Honors. We'll come down to Greek Council and proceed on the next case. Last case.
judges: Paul V. Niemeyer, G. Steven Agee, Albert Diaz